UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GEOFFREY BELLAND, on his own
behalf and others similarly situated,

    Plaintiff,

v.                                                    Case No:   6:14-cv-842-Orl-22TBS

CHINCHOR ELECTRIC, INC., and
TIMOTHY I. CHINCHOR,

    Defendants.

## REPORT AND RECOMMENDATION

This case comes before the Court on the parties' Amended Joint Motion for Approval of Settlement.  (Doc. 31).   The parties request the Court's approval of their proposed settlement of Plaintiffs Geoffrey Belland ("Belland") and Karl Ewald's ("Ewald") Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, claims against Defendants. Upon due consideration, I respectfully recommend that the motion be **GRANTED**.

### I. Background

Belland alleges that he was employed by Defendants as a non-exempt, hourly paid foreman, in Orange City, Volusia County, Florida.  (Doc. 1, ¶ 2).   In his answers to the Court's interrogatories, he testified that he was required to work off the clock and that Defendants made an improper lunch deduction from his pay.  (Doc. 24, ¶ 6).   Based upon 5 to 11 hours of uncompensated overtime per week for 66 weeks, he claimed $13,464 in actual damages together with liquidated damages, costs and attorney's fees. (Id.).

Ewald consented to join this lawsuit as an opt-in plaintiff.[1] (Doc. 13). According to his answers to the Court's interrogatories, Ewald was employed by Defendants for approximately 22 weeks as a traffic signal installer. While employed by Defendants, he was also required to work off the clock and Defendants claimed improper lunch deductions. (Doc. 25, ¶¶ 4 and 6). Ewald testified that he typically worked 5 to 12 hours per week of uncompensated overtime and that his damages totaled $3,828 plus liquidated damages, costs and attorney's fees. (Id., ¶ 7).

Defendants denied liability and affirmatively alleged, *inter alia*, that all of their actions were carried out in good faith and therefore, liquidated damages are not warranted. (Doc. 17, ¶ 24).

After Belland and Ewald answered the Court's interrogatories, the parties conferred and reached a complete resolution of the Plaintiffs' claims. Under the terms of his settlement agreement, Belland will be paid $13,464, minus appropriate withholdings, as wages, and his attorney will receive $5,000 for fees and costs. (Doc. 31-1 at I). Under the terms of his separate settlement agreement, Ewald will be paid $3,828, minus appropriate withholdings, as wages, and his attorney will receive $2,708 for fees and costs. (Doc. 31-2 at I).

The parties agree that there is no evidence of a lack of good faith and that pay records document the payment of some overtime compensation to Belland and Ewald. (Doc. 31 at 3-4). Accordingly, they agree that liquidated damages are not appropriate.

In their respective settlement agreements, Belland and Ewald have released Defendants from all claims they have, had, or may have under the FLSA. (Docs. 31-1 and 31-2 at II). Belland and Ewald also waive any right or ability to be a class or

---

[1] There are no other opt-in Plaintiffs. Therefore, these settlements do not bar claims by other similarly situated individuals.

collective action representative or to otherwise participate in a class, collective, or multi-party proceeding under the FLSA. (Id.). Finally, they have acknowledged that they have no known workplace injuries or occupational diseases. (Id., at IV).

## II. Discussion

### A. Legal Standard

The United States Court of Appeals for the Eleventh Circuit has explained that an FLSA claim can be settled and resolved in two ways. First, an employee may settle and waive claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. 29 U.S.C. § 216(c); Lynn's Food Stores, Inc. v. U.S., 679 F.2d 1350, 1353 (11th Cir. 1982). Second, an employee may settle and waive claims under the FLSA if the parties present to a district court a proposed settlement agreement, and the district court enters a judgment approving the settlement. Lynn's Food Stores, Inc., 679 F.2d at 1353.

The district court must scrutinize the parties' settlement agreement and determine whether it is a "fair and reasonable resolution of a bona fide dispute" of the FLSA issues. Id. at 1354-55. If the parties' settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement in litigation." Id. at 1354. The nature of this lawsuit prompts the district court's review of the settlement agreement rather than an examination conducted by the Secretary of Labor. My assessment of fairness is guided by prevailing case law in this Circuit, including Dees v. Hydradry, 706 F. Supp. 2d 1227 (M.D. Fla. 2010) and Fiber Moreno v. Regions Bank, 729 F. Supp. 2d 1346 (M.D. Fla. 2010).

In determining whether a settlement is fair and reasonable, the Court considers the

following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." Hamilton v. Frito-Lay, Inc., No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." Id. (citing Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977)).

### B. Fraud or Collusion

The parties are represented by counsel who represent to the Court that these settlements are fair and reasonable resolutions of Plaintiffs' FLSA claims. On December 30, 2014, I held a hearing to discuss the parties' settlements and in particular, my concerns about the content of their original settlement agreements. The agreements now before the Court reflect substantial changes made as a result of that hearing. Based upon my conversation with counsel at the hearing and the contents of the papers they have filed, I find no evidence of fraud or collusion in these settlements.

### C. Settlement Amounts

Under the terms of their settlement agreements, both Plaintiffs will receive the full amount of their actual damage claims. Accordingly, I find these amounts to be fair and reasonable.

### D. Liquidated Damages

The FLSA generally provides for the recovery of liquidated damages by a claimant who recovers past due and unpaid overtime wages. See Title 29 U.S.C. § 216(b) which states that: "Any employer who violates the provisions of [the FLSA] shall be liable to the employee … affected in the amount of their unpaid minimum wages … in an additional equal amount as liquidated damages." The FLSA also establishes a good faith defense

to the award of liquidated damages:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act … the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [§ 216(b)].

29 U.S.C. § 260.

"To satisfy the subjective 'good faith' component, the employer has the burden of proving that it had an honest intention to ascertain what the [FLSA] requires and to act in accordance with it."  Davila v. Menendez, 717 F.3d 1179, 1185 (11th Cir. 2013) (quoting Dybach v. Fla. Dep't of Corr., 942 F.2d 1562, 1566 (11th Cir. 1991)).  When the employer fails to prove that it acted in both subjective and objective good faith, the award of liquidated damages is mandatory.  Davila, 717 F.3d at 1186.  An employee cannot waive his right to liquidated damages in an FLSA settlement agreement when there is no genuine dispute about the employee's entitlement to liquidated damages.  Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 70 (1945).

Here, the parties agree that whenever Belland and Ewald recorded time worked in excess of 40 hours in a work week, Defendants compensated them at the rate of time and one-half their regular rates of pay.  (Doc. 31 at 4).  Belland and Ewald also agree that "[h]aving compensated Plaintiffs at time and one half their regular rates of pay for the hours Plaintiffs recorded on their timesheets, Defendants reasonably believed they complied with the requirements of the FLSA."  (Id.).  In the absence of evidence of fraud or collusion, I recommend the Court accept the parties' agreement and find that liquidated damages are not required as part of these settlements.

### E. Releases

General releases in FLSA cases are frequently viewed as "'side deals' in which the

- 5 -

employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee," and therefore, such releases "confer[ ] an uncompensated, unevaluated, and unfair benefit on the employer." Moreno, 729 F. Supp. 2d at 1351-52. Consequently, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." Id. at 1352. The releases in this case are restricted to Belland and Ewald's claims under the FLSA. Because their FLSA claims are being satisfied by the settlements in this case, I do not find the releases to be objectionable.

In addition to the releases, Belland and Ewald are waiving their rights and ability to be class or collective action representatives or to otherwise participate in a class, collective or multi-party proceeding under the FLSA. (Id.). The object of these settlements is to resolve all of Belland and Ewald's FLSA claims against Defendants. If Plaintiffs no longer possess FLSA claims against the Defendants, then it follows that they no longer qualify to participate in any future FLSA actions against Defendants. Therefore, I do not find that Plaintiffs are relinquishing anything of value or that Defendants are gaining anything by these waivers.

Finally, Belland and Ewald are acknowledging that they have no known workplace injuries or occupational diseases. This appears to be an attempt by Defendants to obtain an uncompensated side benefit from Plaintiffs. First, I question the value of this clause to Defendants. Belland ceased working for them in March, 2014 and Ewald ceased working for them in October, 2012. (Doc. 24, ¶1; Doc. 25, ¶ 1). Presumably, if either Plaintiff had suffered a workplace injury or contracted a workplace disease it would have manifested itself by now. And, if Plaintiffs are unaware of the injury or disease, then it is not barred by these settlement agreements. Nevertheless, I recommend the

Court employ the severability clause, section III.D., in each settlement agreement to sever and delete section IV.C., from each settlement agreement.

### F. Attorney's Fees

In FLSA lawsuits for unpaid minimum wages or unpaid overtime wages, "[t]he court ... shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Courts have interpreted this provision to mean that "fee awards [are] mandatory for prevailing plaintiffs." Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1542 (11th Cir. 1985). Under the FLSA, the Court reviews the reasonableness of counsel's legal fees to insure that they are adequately compensated for services rendered, and that no conflict of interest taints the claimant's recovery. Silva v. Miller, 307 F. App'x. 349, 351 (11th Cir. 2009). "However, an in depth analysis is not necessary unless the unreasonableness [of the attorney's fee] is apparent from the face of the documents." Perez v. Nationwide Prot. Serv., 6:05-cv-328-Orl-22JGG, 2005 U.S. Dist. LEXIS 45849, at *1 (M.D. Fla. Oct. 31, 2005). The parties agree that a total of $7,708 in fees and costs for the prosecution of Plaintiffs' claims is reasonable and was negotiated separately from Plaintiffs' recoveries, without regard to the amount of the settlement sums. (Doc. 31, p. 4-5). This is sufficient to establish the reasonableness of the fees and that Plaintiffs' recoveries were not adversely affected by the amount of fees paid to their counsel. See Bonetti v. Embarq Mng't Co., 715 F. Supp. 2d 1222 (M.D. Fla. 2009). On this record, I find the attorneys' fees and costs agreed to be paid to counsel for Belland and Ewald to be fair and reasonable.

### III. Recommendation

Upon consideration of the foregoing, I **respectfully recommend** that the Court:

(1) **GRANT** the parties' amended motion (Doc. 31);

  (2) **STRIKE** Section IV.C. from both settlement agreements;

  (3) **APPROVE** the parties' settlement agreements (Docs. 31-1 and 31-2) following the striking of Section IV.C., from each;

  (4) **TERMINATE** all pending motions;

  (5) **DISMISS** this case with prejudice; and

  (6) **DIRECT** the clerk to close the file.

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

  **RESPECTFULLY RECOMMENDED** in Orlando, Florida on January 21, 2015.

*[signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

  Presiding United States District Judge
  Counsel of Record